United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TREND MICRO INCORPORATED,
Plaintiff,

v.

RPOST HOLDINGS, INC., et al.,
Defendants.

Case No. 13-cv-05227-WHO

**ORDER GRANTING IN PART AND DENYING DEFENDANTS' MOTION TO DISMISS, AND DENYING DEFENDANTS' MOTION TO TRANSFER VENUE**

Re: Dkt. Nos. 28, 30

## INTRODUCTION

The pending motions require me to decide (i) whether some or all of the defendants, RPost Holdings, Inc. ("RPH"), RPost Communications Limited ("RPC"), RPost International Limited ("RPI"), and RMail Limited ("RMail") (collectively, "Defendants"), have been properly served and joined in plaintiff Trend Micro, Inc.'s lawsuit seeking a declaration that it has not infringed on Defendants' patents and (ii) whether to transfer this case to the Eastern District of Texas, where eleven other cases involving Defendants' patents are pending. Because Trend Micro's process server's declaration of service, describing his six attempts to serve Defendants, culminating in the receipt of the summons and complaint by one of their officers, was more credible than Defendants'officer's inconsistent declarations, I find that Trend Micro substantially complied with its service obligations and attained personal jurisdiction over Defendants. Trend Micro lacks standing to sue RPI and RMail, however, because they do not have a current legal interest in the patents, so they are dismissed without prejudice. Defendants' motion to transfer is denied because Trend Micro was the first to file suit and the convenience factors weigh in favor of litigation in this District.

United States District Court
Northern District of California

## BACKGROUND

### I. ALLEGATIONS IN THE COMPLAINT

Between June 26, 2012, and August 6, 2013, the United States Patent and Trademark Office ("PTO") issued United States Patent Nos. 8,504,628 ("the '628 patent"), 8,224,913 ("the '913 patent"), 8,209,389 ("the '389 patent") and 8,468,199 ("the '199 patent") (collectively, the "patents in suit"). Compl. ¶¶ 13-15. Each of the '628, '913, and '389 patents "states on its face that it was assigned to [RPC]." *Id.*; Exs. C, D, and E. The '199 patent "states on its face that it was assigned to [RPI]." *Id.* at ¶ 16; Ex. F. Trend Micro contends that RPC "has right, title, and interest in the '628, '913 and '389 patents," that RPI "has right, title, and interest in the '199 patent." *Id.* at ¶¶ 17-18.

On October 16, 2013, RPH sent a cease and desist letter to Trend Micro stating that "Trend Micro is offering products and services . . . that we believe infringe certain patents owned by RPost." *Id.* at ¶ 20; Ex. A at 1-5. The letter contains "Preliminary Summary Analyses" with claim charts alleging infringement of certain Trend Micro products for claim 30 of the '628 patent, claim 1 of the '913 patent, claim 7 of the '389 patent, and claim 1 of the '199 patent. *Id.* at ¶ 21; Ex. A at 2-5. On November 4, 2013, RPH sent Trend Micro another cease and desist letter stating that additional Trend Micro products infringed Defendants' patents. *Id.* at ¶¶ 22-23; Ex. B at 1, 3-5. Trend Micro filed this action on November 11, 2013, seeking a declaratory judgment for patent noninfringement and invalidity with respect to all four patents. *Id.* at 11 & ¶ 25.

### II. SERVICE OF PROCESS

Trend Micro asserts service on RPC, RPI, and RMail occurred as a result of personal service of the companies' officer, Zafar Khan. Trend Micro's process server, Derek Lee, visited Khan's house in California five times prior to the night he spoke to a man he believed was Khan on December 3, 2013, at approximately 8:23 pm. Lee Decl. (Dkt. No. 34) ¶¶ 1, 3-5. Lee states that he previously confirmed that Khan lived at the address with junk mail addressed to Khan on the ground near the front door. *Id.* ¶ 3.

When Lee arrived at the house on the night in question, he looked through the blinds

beside the front door and observed a man sitting on a couch. *Id.* ¶ 5. After the man saw him through the window, Lee asked through the window whether he was Zafar Khan. The man nodded, got up, and opened the door. *Id.* ¶¶ 5-6. Lee then informed the man that he was hired to serve papers on Zafar Khan. The man denied being Khan and stated that he did not know Khan. *Id.* ¶ 6. Lee asked for identification, and the man closed the door. *Id.* Lee then announced service and left the papers on the doorstep. *Id.*[1] Lee's signed proofs of service state that the summons and complaint were personally served on RPC, RPI, and RMail during usual business hours through personal service of the companies' officer, Zafar Khan, at 8:23 p.m., on December 3, 2013. Lee Decl. Ex. B.

Zafar Khan offers two declarations to contest Lee's proofs of service and declaration. Khan's first declaration states that at approximately 9:00 p.m. on the night of December 3, 2013, as he was going to the gym, he discovered a package of papers containing the summons and complaint. First Khan Decl. ¶ 7. He also states that no person in his household knew about the papers "or spoke to anyone regarding accepting their delivery," and that he "never personally saw or spoke with the process server for this case." *Id.* ¶¶ 8-9.

Khan's second declaration purports to identify several errors in Lee's declaration. First, Khan states that there is never addressed junk mail near his front door. Second Khan Decl. ¶ 3. Second, although Khan states that he never had a conversation with Lee, he admits that he heard a knock on the night in question, "answered the door, saw a strange man, in the pitch dark (note, we don't have a light outside) and closed the door." *Id.* ¶¶ 5-6. Khan states that he did not know the man at his door was a process server. *Id.* ¶ 8. Third, Khan states that he was not at home at 8:23 p.m. on December 3, 2013. *Id.* ¶ 7. Finally, Khan states that the layout and lighting of the front of his house makes it impossible for Lee to see him on the couch and respond to a question about his identity. *Id.* ¶ 4. Two of the pictures attached to Khan's second declaration show two narrow windows immediately adjacent to the front door of Khan's house. *See id.* at Photos A-1, A-4. An additional picture shows that there is no couch directly behind the front door. *See id.* at Photo A-

[1] Lee later confirmed that the man he attempted to serve on December 3, 2013 was Zafar Khan when he was shown a photograph of Khan at Trend Micro's lawyers' office. Lee Decl. ¶ 7, Ex. A.

5.

Trend Micro in its sur-reply attaches a picture of the front of Khan's house. Third Fuehrer Decl. (Dkt. No. 49-1) ¶ 2 & Photo A-1. It shows that, in addition to the narrow windows next to the front door, there is a large picture window to the left of the front door of Khan's house. *See id.* This window is visible from the walkway. *See id.*

### III. RPI'S ASSIGNMENT OF THE PATENTS IN SUIT TO RPC

Defendants contend that RPI and RMail do not own the patents in suit. On May 20, 2001, Dr. Terrance Tomkow assigned what eventually became the patents in suit to RPI. Fitzgerald Decl. (Dkt. No. 28-1) ¶ 6; *see also* Opp. to Mtn. to Dismiss (Dkt. No. 33) 1. On March 21, 2011, RPI assigned and transferred "its entire right, title, and interest and obligations in" the patents in suit to RPC. First Khan Decl. Ex. A at 2. Four months after RPI assigned the patents in suit to RPC, Kenneth Barton, a former founder and officer of RPI, filed an action in California Superior Court alleging that RPI fraudulently transferred its assets to RPC. *See Kenneth Barton v. RPost Int'l Ltd., et al.*, No. YC-065259 (Cal. Super. Ct. L.A. Cnty., July 28, 2011); *see also* First Fuehrer Decl. (Dkt. No. 35) Ex. D ¶ 10 (hereafter, "Barton 259").[2] Among other remedies, the plaintiffs in Barton 259 seek to void RPI's March 2011 assignment to RPC. *Id.* at 10-11. Barton 259 is scheduled for a jury trial on November 3, 2014. *See Barton v. RPost Int'l Ltd., et al.*, No. YC-065259 (Dkt. Order Scheduling Jury Trial).

### IV. DEFENDANTS' PATENT INFRINGEMENT ACTIONS IN THE EASTERN DISTRICT OF TEXAS

RPH, RPC, and RMail are the plaintiffs in a number of patent infringement cases currently pending before the Honorable Rodney Gilstrap in the Eastern District of Texas. The defendants

[2] Barton had previously obtained a judgment against RPI, Dr. Tomkow, and Khan for fraud and breach of fiduciary duty claims. *See Barton v. RPost Int'l, Ltd., Zafar Kahn and Terrance Tomkow*, No. YC-061581 (Cal. Super. Ct. L.A. Cnty., Jan. 29, 2010) (hereafter, "Barton 581"). In Barton 581, the California Superior Court found that RPI, Dr. Tomkow, and Khan had committed fraud and were held jointly and severally liable for actual damages of $3.2 million. *See id.*; *see also* First Fuehrer Decl. Exs. A, B at ¶¶ 2-3 & p.3. The judgment is on appeal before the California Court of Appeals, Second Appellate Division. *See Barton v. RPost Int'l, Ltd. et al.*, No. B251722 (Cal. App. 2 Dist. Sep. 19, 2013).

include Trend Micro as well as other entities. At the time Trend Micro filed this action, Defendants had eight other actions pending in Texas involving two of the patents in suit (the '389 and '913 patents). *See RPost Holdings, et al. v. Epsilon Data Mgmt., LLC, et al.*, No. 12-cv-511, Dkt. No. 30 (E.D. Tex. Jan. 30, 2014) (listing Defendants' cases). Judge Gilstrap consolidated three of the actions, but recently stayed and administratively closed the actions pending the outcome of the Barton 259 fraudulent transfer action. *See id.* at *10-14. He reasoned that "[i]f the fraudulent transfer claims are ultimately resolved in Barton's favor and the March 2011 transaction declared null and void, then that result would have a considerable impact on Plaintiffs' standing to sue in each of the above actions." *Id.* at *11. At the time of his order, Judge Gilstrap had not construed the '389 and '913 patents. *See id.* at *13 ("The Epsilon Data action has just started claim construction briefing and is in its early stages. The Constant Contact and Infogroup actions are in their infancy and are still awaiting a scheduling conference").[3]

After Trend Micro filed its declaratory judgment action in this District, Defendants filed three additional patent infringement actions in the Eastern District of Texas. One of these actions is against Trend Micro, and asserts the four patents in suit and two additional patents. *See RPost Holdings, Inc. and RPost Commc'ns, Ltd. v. Trend Micro, Inc.*, No. 13-cv-1065 (E.D. Tex. Dec. 9, 2013). The other two actions in the Eastern District of Texas involve different defendants, but they both allege claims involving all four of the patents in suit. *See RPost Holdings, Inc. et al. v. Symantec Corp.*, No. 2:14-cv-28 (E.D. Tex. Jan. 15, 2014); *RPost Holdings, Inc., et al. v. Sophos, Inc.*, No. 13-cv-959 (E.D. Tex. Nov. 11, 2013).

RPH, RPC, RMail, and RPI are defendants in two other declaratory relief actions pending in this District. *See Symantec Corp. v. RPost Holdings, Inc.*, No. 14-cv-00238 (N.D. Cal. Jan. 15, 2014) (Cousins, J.); *MIS Scis. Corp. v. RPost Commc'ns Ltd.*, No. 14-cv-00376 (N.D. Cal. Jan. 24, 2014) (Wilken, J.). Symantec's action involves all four of the patents in suit, *Symantec*, No. 14-cv-00238, Dkt. No. 1, and MIS Sciences' action involves three of the four patents in suit (the '913,

[3] One of the consolidated actions, *RMail Ltd. v. Amazon.com, Inc., et al.*, No. 2:11-cv-299, was "on the cusp of trial." *Epsilon Data*, No. 12-cv-511, *13. That case does not involve any of the patents in suit.

United States District Court
Northern District of California

'389, and '199 patents), *MIS Sciences*, No. 14-cv-00376, Dkt. No. 16. According to Trend Micro, Symantec filed its declaratory judgment action before Defendants, although both filed their complaints on January 15, 2014. Second Fuehrer Decl. (Dkt. No. 37-2) ¶ 13. Defendants have not filed a patent infringement action against MIS Sciences.

**LEGAL STANDARDS**

## I. MOTION TO DISMISS

Rule 12(b)(5) of the Federal Rules of Civil Procedure allows the defendant to move to dismiss for "insufficient service of process." "Once service is challenged, plaintiffs bear the burden of establishing that service was valid." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). The plaintiff "normally meets this burden by producing the process server's return of service[, which] is generally accepted as prima facie evidence that service was effected, and of the manner in which it was effected." *Emine Tech. Co., Ltd. v. Aten Int'l Co., Ltd.*, No. 08-cv-3122, 2008 WL 5000526, at *2 (N.D. Cal. Nov. 21, 2008) (Hamilton, J.).

Unless there is a defect in the proofs of service, "a motion to dismiss under Rule 12(b)(5) requires defendant to produce affidavits, discovery materials, or other admissible evidence establishing the lack of proper service." *Id.* "In response, the plaintiff must provide evidence showing that the service was proper, or creating an issue of fact requiring an evidentiary hearing to resolve." *Id.* "If a Rule 12(b)(5) motion is granted, the court may either dismiss the action or retain the action and simply quash the service." *Id.*

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

**II. MOTION TO TRANSFER**

A court may transfer an action to another district: (1) for the convenience of the parties, (2) for the convenience of the witnesses, and (3) in the interest of justice provided that the action might have been brought in the transferee court. 28 U.S.C. § 1404(a). An action may not be transferred to a district where venue would have been improper if it had originally been filed there. *Lee v. Lockheed Martin Corp.*, No. 03-cv-1533, 2003 WL 22159053, at *1 (N.D. Cal. Sept. 16, 2003) (Illston, J.). In situations where a party is transferring the action in "the interest of justice," courts consider factors such as: (1) avoidance of multiple of actions, (2) sending the action to the state most familiar with governing law, or (3) the feasibility of consolidation with other actions. *See A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Calif.*, 503 F.2d 384, 387-88 (9th Cir. 1974).

Courts interpreting section 1404(a) have added the following factors: (1) the special weight given to the plaintiff's choice of forum; and (2) the ease to access of proof. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "[A] plaintiff's choice of forum is

entitled to greater deference when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) (citation omitted). "When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor applies with less force." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citation and internal quotation marks omitted).

The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer. *Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). It is not enough for defendant to merely show that he prefers another forum, and transfer will also not be allowed if the result is merely to shift the inconvenience from one party to another. *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964).

**DISCUSSION**

**I. MOTION TO DISMISS**

Defendants request that I decide two issues in their favor. First, Defendants contend that the action should be dismissed with respect to RPC, RPI, and RMail under Rule 12(b)(5) for insufficient service of process. Mtn. to Dismiss (Dkt. No. 28) 1. Second, Defendants argue that because the patents in suit were assigned to RPC in 2011, Trend Micro's claims against RPI and RMail should be dismissed under Rule 12(b)(1) for a lack of standing because RPI and RMail are neither the owners nor the exclusive licensees of any of the patents in suit. *Id.*

**A. Service of Process**

Defendants argue that Trend Micro did not make a good faith effort to substantially comply with Rule 4 of the Federal Rules of Civil Procedure's requirements for service of process. Mtn. to Dismiss 5. "A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rule of Civil Procedure 4." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citation omitted). A foreign corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual" or "by delivering a copy of the summons and of the complaint to an officer" of the foreign corporation. FED. R. CIV. P. 4(h)(1)(A)-(B).

Although Rule 4 is flexible and liberally construed so long as a party receives sufficient

notice of the complaint, "substantial compliance" is required. *See Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Courts have found substantial compliance "where there is a good faith effort to comply with" Rule 4's requirements. *Travelers Cas. & Sur. Co.*, 551 F.3d at 1136; *see, e.g.*, *Errion v. Connell*, 236 F.2d 447, 457 (9th Cir. 1956) (holding that service was effective where the process server "pitched the papers through a hole in the screendoor of [the defendant's] apartment," saw and spoke to the defendant, and the defendant "ducked behind a door [and] told her brother" that the sheriff was "making service on her").

Lee's attempts at service establish substantial compliance with Rule 4's requirements. Lee visited Khan's house five times, and on the sixth trip, had a brief conversation with Khan informing him that he was hired to serve papers. After Khan lied about his identity and closed the door, Lee concluded that Khan was attempting to avoid service and left the papers on his front doorstep. These activities are sufficient. *See, e.g.*, *Doe v. Qi*, 349 F. Supp. 2d 1258, 1275 n.5 (N.D. Cal. 2004) ("[w]here a defendant attempts to avoid service . . . . by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant") (citing *Errion*, 236 F.2d at 457) (Wilken, J.).

Lee's signed proofs of service are prima facie evidence that RPI, RPC, and RMail were served through personal service of their officer, Zafar Khan. Generally, a signed proof of service is prima facie evidence of valid service that can be overcome only with "strong and convincing evidence." *See S.E.C. v. Internet Solutions for Bus.*, 509 F.3d 1161, 1166 (9th Cir. 2007), 509 F.3d at 1166. But Defendants contend that the proofs of service are facially defective because of technicalities—they state that RPI and RPC are "domestic corporations," do not mention Khan's physical description or prior attempts at service, and state that service occurred during normal business hours even though service was in the evening. Mtn. to Dismiss 7-8.

Defendants do not offer strong and convincing evidence sufficient to negate the presumption of service. Defendants do not claim that the wrong person was served, that Lee was at the wrong address, or challenge the date in question. *See Internet Solutions*, 509 F.3d at 1166 (holding that the plaintiff "made a prima facie showing that service of process was valid by

providing [the process server's] affidavit in which he swears that he personally served [the defendant] with the summons and complaint at" a specified location on a specified date). Khan's declarations also show that he received the process in question.

Further, Khan's declarations are contradictory and misleading. The first declaration states that he discovered a package of papers containing the summons and complaint as he was going to the gym and claims that he never saw personally saw the process server. First Khan Decl. ¶ 7. The second declaration provides new facts, including that Khan remembers opening the door to "a strange man" without conversation. Second Khan Decl. ¶ 6. In addition, Khan's second declaration attaches a photograph that conceals a large window to the left of Khan's front door that is visible from the walkway. *Id.* at Photos A-1, A-4. Trend Micro in its sur-reply attaches a more accurate photograph of the entire house, which shows a large window to the left of the front door that is visible from the front walkway. *See* Third Fuehrer Decl. at Photo A-1.

Khan's declarations are not as credible as Lee's. *See, e.g.*, *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co., Ltd.*, No. 06-cv-7541, 2007 WL 2403395, at *2 (N.D. Cal. Aug. 20, 2007) (finding that the process server's "account of the events [was] more credible than defendants'" in denying Rule 12(b)(5) motion to dismiss where "both sides rel[ied] on personal declarations and affidavits to support their differing accounts of the [] service") (Hamilton, J.); *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000) (upholding the district court's determination under Rule 12(b)(5) that the defendant's assertion that "he was never served with the summons and complaint . . . . was not credible"). Defendants' motion to dismiss for insufficient service of process is DENIED.[4]

**B. Standing**

Defendants contend that Trend Micro does not have standing to sue RPI and RMail because those entities have no ownership interest in the patents in suit after the March 2011 assignment to RPC. Mtn. to Dismiss 9. Trend Micro argues that because ownership of the patents in suit is in dispute, there is a substantial controversy between Trend Micro and RPI that warrants

[4] Because RPC, RPI, and RMail were properly served, Trend Micro's alternative request to quash service of process and allow Trend Micro to reserve Khan is DENIED AS MOOT.

United States District Court
Northern District of California

declaratory relief. Opp. to Mtn. to Dismiss 14.[5]

The doctrine of standing is an essential part of the case-or-controversy requirement of Article III and is a constitutional prerequisite for a federal court to have subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Article III's prerequisites apply to actions requesting declaratory relief. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-28 (2007). In the patent context, there is an actual controversy if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

In declaratory relief actions for noninfringement and invalidity of a patent, the plaintiff lacks standing to sue if the defendant does not have a legal right to the patents in suit that would allow the defendant to sue the plaintiff for patent infringement. *See Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1480-81 (Fed. Cir. 2008) (holding that "because [the defendant] had no legal interest in the two patents [in suit] and therefore could not bring suit for patent infringement, there was no actual controversy between [the parties] that would support jurisdiction under the Declaratory Judgment Act"); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 983 (N.D. Cal. 2011) (citing *Fina Research*, 141 F.3d at 1481) (additional citation omitted) (Chen, J.).

If a party previously held title to a patent, that party lacks standing to sue for patent infringement if it assigns the patent to another entity. *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (holding that a plaintiff-inventor, who assigned his patent to a corporation in which he was the sole shareholder and managing director prior to filing the action, lacked standing to sue). An assignment transfers "all substantial rights" to the patent; "[w]hen a party holds all rights or all substantial rights, it alone has standing to sue for infringement." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) (citation omitted). Standing must be present at the time suit is brought. *See Lujan*, 504 U.S. at 560. If the plaintiff lacks Article III standing when the complaint was filed, "the suit must be dismissed, and the

[5] Trend Micro has agreed to dismiss its claims against RMail without prejudice. Opp. to Mtn. to Dismiss 1.

jurisdictional defect cannot be cured after the inception of the lawsuit." *Abraxis Bioscience, Inc. v. Navita LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (citations omitted).

RPI does not have a legal right to the patents in suit. It previously held title to the patents in suit, but assigned "its entire right, title, and interest and obligations in" the patents in suit to RPC in March 2011. *See* First Khan Decl. ¶¶ 1-6, Ex. A at 2. Trend Micro does not disagree, but argues that it has standing because of Kenneth Barton's fraudulent transfer action. *See* Opp. to Mtn. to Dismiss 15.

The possibility that the California Superior Court will void RPI's assignment to RPC and vest title to the patents in suit in RPI does not give RPI a present legal right to the patents in suit. *Cf. Nolen v. Lufkin Indus., Inc.*, 469 F. App'x 857, 860 (Fed. Cir. 2012) ("a claim for patent infringement does not arise under the patent laws when it requires judicial action to vest title in the party alleging infringement"). RPI will have a claim for infringement of the patents in suit if its March 2011 assignment to RPC is invalidated. But the California Superior Court has not taken this step, and trial is not set to commence until November 2014. Although Trend Micro is correct that the outcome of Barton 259 could confer standing at a later point in time, "[t]he existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) (citing *Lujan*, 504 U.S. at 569 n. 4).

Trend Micro's contention that "others," namely the plaintiffs in Barton 259, allege that RPI owns the patents in suit is also insufficient to establish that RPI is the actual owner of the patents. *See* Opp. to Mtn. to Dismiss 13. This argument assumes that the plaintiffs in Barton 259 will prevail and the March 2011 assignment will be voided. A party does not have standing based on the possible rescission of an assignment agreement. *Cf. Nolen*, 469 F. App'x at 858 (holding that plaintiffs lacked standing to sue for infringement of a patent they did not own, where their claims were "expressly . . . . contingent on the district court first rescinding the Assignment Agreements and awarding ownership of the assigned patents to Plaintiffs").

Trend Micro contends that proceeding without RPI would be judicially inefficient and potentially inequitable, that RPI is a necessary party to provide complete relief, and that RPI

United States District Court
Northern District of California

would suffer no prejudice if it were required to stay in the action. Opp. to Mtn. to Dismiss 15-16. Perhaps. But none of these concerns demonstrate that standing existed at the time Trend Micro filed its complaint. *See Skaff*, 506 F.3d at 838.

Trend Micro cannot show that RPI is currently a patentee, successor in title, or exclusive licensee of the patents in suit. *See WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010); *see also Top Victory Elecs. v. Hitachi Ltd.*, No. 10-cv-01579, 2010 WL 4722482, at *2-3 (N.D. Cal. Nov. 15, 2010) (holding that the plaintiff lacked standing to sue for declaratory relief because the defendant was not "an owner, assignee, or exclusive licensee of the patents when the action was filed" and had "assigned the patents to its subsidiary" before the action was filed) (Breyer, J.). RPC is the current owner of the patents in suit, and RPC "alone has standing to sue for infringement." *See Morrow*, 499 F.3d at 1340. Trend Micro therefore lacks standing to sue RPI for a declaratory judgment of noninfringement and invalidity.

Defendants' motion to dismiss with respect to RPI is therefore GRANTED and Trend Micro's claims against RPI are DISMISSED WITHOUT PREJUDICE.[6]

**II. MOTION TO TRANSFER**

Defendants move to transfer venue to the Eastern District of Texas under 28 U.S.C. section 1404(a). This motion raises two issues: (i) whether I should follow the first to file rule and deny Defendants' motion on that basis alone, and (ii) whether section 1404(a)'s convenience factors favor transferring the action to the Eastern District of Texas.

**A. First-to-file rule**

The parties disagree over whether I should apply the "first-to-file" rule. Trend Micro argues that the "first-to-file" rule applies because it filed its complaint in this district four weeks before Defendants filed their action against Trend Micro in the Eastern District of Texas. Opp. to Mtn. to Transfer (Dkt. No. 37) 5-6. Defendants argue that the first-to-file rule is inapplicable because judicial economy and the convenience factors favor litigating Trend Micro's claims in the Eastern District of Texas. Mtn. to Transfer (Dkt. No. 30) 6-9.

[6] Trend Micro may amend its complaint to add RPI if the March 2011 assignment agreement is voided and RPI is declared the owner of the patents in suit.

"Federal Circuit law controls the first-to-file rule in patent cases such as this, where an action for infringement and a declaratory judgment action for non-infringement are pending in different districts." *EMC Corp. v. Bright Response, LLC*, No. 12-cv-2841, 2012 WL 4097707, at *3 n.2 (N.D. Cal. Sept. 17, 2012) (citations omitted) (Chen, J.). The Federal Circuit applies "the general rule favoring the forum of the first-filed case, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise." *Elec. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (citation and internal quotation marks omitted).

However, 28 U.S.C. section 1404(a)'s "convenience factors" are particularly significant given the Federal Circuit's concern with "the newly understood legal environment surrounding declaratory judgment jurisdiction in patent cases." *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904-905 (Fed. Cir. 2008). In order to prevent the parties from "rac[ing] to the courthouse to seek a forum more convenient and amenable to their legal interests," the trial court "weighing jurisdiction additionally must consider the real underlying dispute: the convenience and suitability of competing forums." *Id.* at 905. Therefore, where a potential patent infringement defendant and a patent holder each file separate actions in different forums that involve the same issues, "the trial court must weigh the factors used in a transfer analysis as for any other transfer motion."[7] *Id.*

Here, Trend Micro has satisfied all three elements of the first to file rule, which are: (i) the chronology of the two actions; (ii) the similarity of the parties; and (iii) the similarity of the issues. *EMC Corp.*, 2012 WL 4097707 at *1 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625–626 (9th Cir. 1991)). Trend Micro filed its action in this District first nearly a month before Defendants filed their action in the Eastern District of Texas. *See, e.g., id.* at *2 (holding that factor was satisfied where the second-filed action was filed 27 days after the first-filed action). The second factor requires only "substantial similarity" between the parties, and here the parties are identical. *See Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010)

[7] This calls for the application of the factors delineated under regional circuit law. *See EMC Corp.*, 2012 WL 4097707, at *3 n.2 (citing *Micron Tech.*, 518 F.3d at 904) (Chen, J.)

(citation omitted). The third factor requires only a "similarity in allegations [that] would require the court to make similar determinations," and here the same four patents are at issue in both actions. *See id.* at 1148. Further, the circumstances do not indicate that Trend Micro's complaint implicates the "race to the courthouse" problem identified by the Federal Circuit. *See Micron Tech.*, 518 F.3d at 904. After Trend Micro received Defendants' infringement notice letters, Trend Micro waited a month to file its action in this District. This does not come close to "literally sprinting to the courthouse the same day." *Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 16 (D. Mass. 2002) (citation omitted).

**B. 28 U.S.C. section 1404(a)**

The convenience factors also support Trend Micro. Under section 1404(a), generally, the "plaintiff's choice of forum is afforded substantial weight," *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (Walker, J.), especially when the plaintiff has chosen its home forum, *Piper Aircraft*, 454 U.S. at 255. A moving "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843. Transfer will be denied where it would merely shift rather than eliminate the inconvenience. *Id.*

The Ninth Circuit requires that courts consider a variety of factors in determining whether to transfer an action. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *Decker Coal*, 805 F.2d at 843. The relevant factors are:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Barnes & Noble*, 823 F. Supp. 2d at 993 (Chen, J.).

The factors weigh against transfer. First, Trend Micro's decision to bring suit in its home forum is entitled to substantial weight. *See Piper Aircraft*, 454 U.S. at 255 ("[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum").[8] Second,

---

[8] Defendants rely on *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979), and assert that the transfer statute is designed to protect the defendant from an inconvenient forum, not the

United States District Court
Northern District of California

the convenience of the parties and witnesses weighs heavily against transfer. Trend Micro has a substantial presence in this District, and hundreds of its employees and potential witnesses live or work in this District. Opp. to Mtn. to Transfer 10-11 (citing Chen Decl. (Dkt. No. 37-1) ¶¶ 2-3). Defendants, in contrast, identify a single office in the Eastern District of Texas with no full-time employees. Mtn. to Transfer 10. Further, Defendants do not identify a single party witness in the Eastern District of Texas; instead, they identify one witness that lives near the Eastern District of Texas, in Dallas, and two witnesses that live in Los Angeles, California, which is closer to this District than the Eastern District of Texas. Reply to Opp. to Mtn. to Dismiss 7. Third-party witnesses are located in both this District and the Eastern District of Texas—neither forum is significantly more convenient than the other. *See* Mtn. to Transfer 12; Opp. to Mtn. to Transfer 11.

Third, the ease of access to evidence weighs against transfer. The only evidence identified by Defendants—the source code for their patented products—is located in Los Angeles, California. Reply to Opp. to Mtn. to Transfer 9. Most of Trend Micro's evidence, including its technical documentation, is located in this District. Opp. to Mtn. to Transfer 12. Defendants contend that they maintain "a significant portion of [their] documents" in Plano, Texas, and that Trend Micro's maintains relevant documents in Irving, Texas, but fail to explain why these documents are relevant. Mtn. to Transfer 15. Finally, given Trend Micro's substantial presence in this District, there is a local interest in adjudicating its claims in this District.[9]

Defendants argue that hearing Trend Micro's claims in this District would be judicially

---

plaintiff. Reply to Opp. to Mtn. to Transfer (Dkt. No. 39) 5-6. Their reliance is misplaced. In *Leroy*, the Supreme Court observed that "[i]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." 443 U.S. at 184 (citations omitted). Not only was the Supreme Court's observation not in reference to the transfer statute, but it reflects a concern not remotely relevant here: that whenever Congress designates a specific venue by statute, it generally seeks to protect the defendant from an unfair or inconvenient place of trial. *See id.* Accordingly, Defendants "must make a strong showing of inconvenience to warrant upsetting [Trend Micro's] choice of forum." *Decker Coal*, 805 F.2d at 843.

[9] Both districts are familiar with patent law and are similarly congested. The difference in time to trial is not substantial, especially considering Judge Gilstrap's recent order and the delay typically caused by transfer of venue. *See Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) (Alsup, J.). These factors are therefore neutral.

United States District Court
Northern District of California

inefficient because the Eastern District of Texas has invested substantial time and resources managing Defendants' other actions that involve two or more of the patents in suit. They also argue that Trend Micro's action can be consolidated with Defendants' other actions in Texas that involve all four of the patents in suit, including Defendants' action against Trend Micro. Mtn. to Transfer 7-9. Trend Micro, in contrast, asserts that keeping its action in this District will promote judicial economy because there are currently two other declaratory judgment actions against Defendants in this District involving three or four of the patents in suit. Opp. to Mtn. to Transfer 13. Trend Micro also argues that judicially efficiency would not be lost if the action is kept in this District because the Eastern District of Texas has never construed any of the patents in suit. *Id.*

The feasibility of consolidation does not weigh in favor of transfer. First, the Eastern District of Texas has not construed any of the patents in suit. Defendants did not assert two of the four patents in suit (the '628 and '199 patents) until November 2013. Therefore, even if Trend Micro's action is transferred, Judge Gilstrap will still need to conduct a claim construction hearing for the patents in suit anew. Judge Gilstrap's prior experience with other patents owned by Defendants that have similar terms does not eliminate this requirement. Although Defendants have asserted the two other patents in suit (the '389 and '913 patents) in eight other actions in the Eastern District of Texas, Judge Gilstrap has not construed those patents. Moreover, Judge Gilstrap's recent order to stay and administratively close several of Defendants' actions involving the '389 and '913 patents makes it less likely that they will be construed in the near future. Judge Gilstrap's familiarity with the patents and Defendants might argue in favor of transfer, but it does not overcome the strength of the other factors I have already discussed.

Further, there are two other declaratory judgment actions against Defendants in this District that involve the patents in suit: *Symantec Corp. v. RPost Holdings, Inc.*, No. 14-cv-00238 (N.D. Cal. Jan. 15, 2014) (Cousins, J.), and *MIS Sciences Corp. v. RPost Communications Ltd.*, No. 14-cv-00376 (N.D. Cal. Jan. 24, 2014) (Wilken, J.). While it is unclear whether consolidation of these matters is appropriate, it is feasible if it is desirable. There is little to support Defendants' assertion that Trend Micro's action cannot be consolidated with the two other cases in this District against Defendants that involve three or four of the patents in suit. *Cf. Inherent.com v.*

*Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1101 (N.D. Cal. 2006) (reasoning that transfer to first-filed forum was warranted in part because "consolidation with the first-filed action [was] feasible"). The feasibility of consolidation factor therefore weighs against transfer.

In sum, Defendants fail to make a strong showing of inconvenience that warrants upsetting Trend Micro's choice of its home forum. *See Decker Coal*, 805 F.2d at 843. Defendants' motion to transfer venue to the Eastern District of Texas is therefore DENIED.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion to dismiss for insufficient service of process regarding RPI, RPC, and RMail is DENIED. However, the claims against RPI and RMail are DISMISSED WITHOUT PREJUDICE. Defendants' motion to transfer venue is DENIED. RPH and RPC shall answer the Complaint within 20 days.

**IT IS SO ORDERED**.

Dated: April 7, 2014



WILLIAM H. ORRICK
United States District Judge